UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

Matthew Hanson *aka* Matthew A. Hanson,

        Debtor.
-------------------------------------------------------------x

Chapter 7

Case No. 8-13-73855-las

# MEMORANDUM DECISION AND ORDER

*Appearances:*

Weinberg Gross & Pergament
*Attorneys for Chapter 7 Trustee*
By: Seth Choset, Esq.
400 Garden City Plaza, Suite 403
Garden City, NY 11530


Scupp & Berman LLP
*Attorneys for Debtor*
By: Charles H. Scupp, Esq.
220 Old Country Road,
First Floor
Mineola, NY 11501

Hon. Louis A. Scarcella, United States Bankruptcy Judge

Previously, Marc A. Pergamant, the chapter 7 trustee (the "Trustee"), moved pursuant to 11 U.S.C. § 707(b)(1) to dismiss the bankruptcy case of Matthew Hanson (the "Debtor") for abuse of chapter 7 of the Bankruptcy Code based upon the "totality of the circumstances" under 11 U.S.C. §707(b)(3)(B) (the "Motion to Dismiss") [docket no. 22].  A hearing on the Motion to Dismiss was held by the Court on June 17, 2014 at which Weinberg, Gross & Pergament LLP, the Trustee's counsel, appeared.  Neither the Debtor nor his counsel, Scupp & Berman, LLP ("S&B"), filed any opposition or appeared at the hearing on the Motion to Dismiss.  After considering the papers filed with the Court and the arguments made by the Trustee's counsel, the Court granted the Motion to Dismiss at the June 17, 2014 hearing.  Now, before the Court is the Trustee's motion under 11 U.S.C. § 707(b)(4)(C) and (D) seeking an order directing S&B to reimburse the Trustee for the attorneys' fees and costs in the sum of $7,689.07 that he incurred in connection with the prosecution of the Motion to Dismiss (the "Motion") [docket no. 26].  The following constitutes the Court's findings of fact and conclusions of law as mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and (b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011.  Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(O) in which final orders or judgment may be entered by this Court pursuant to 28 U.S.C. § 157(b)(1).

FACTS[1]

On July 25, 2013 (the "Petition Date"), the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code.

The Debtor's Schedule I (Current Income of Individual Debtor(s)) to the petition states that as of the Petition Date, the Debtor is self-employed as a freelance animation and graphic designer, and has an estimated average or projected monthly gross income of $6,475.  S&B estimated the Debtor's income tax obligation on a monthly basis to be about twenty percent of his monthly gross income. Thus, counsel deducted $1,295 from the Debtor's gross income to arrive at an average monthly net income of $5,180 for the Debtor.

The non-debtor spouse, Elizabeth Hanson ("Elizabeth", together with the Debtor, the "Hansons"), is employed as a business manager at Psyop Productions, LLC, a marketing firm specializing in animation, illustration, and 3D design.  Elizabeth's income is deposited into a joint checking account with the Debtor at PNC Bank from which household expenses are paid. In addition, the Hansons file their tax returns jointly.  According to line 1 of Schedule I, Elizabeth's estimated or projected monthly gross income is $7,576, which was approximately twice the bi-weekly gross income reflected on her earnings statement dated January 11, 2013 (the "Earnings Statement").  S&B then deducted $1,515.20 for payroll taxes and social security from Elizabeth's monthly gross income of $7,576 to arrive at a monthly net income of $6,060.80 for Elizabeth.  Based upon the foregoing, the Debtor's Schedule I reflects a combined average monthly net income of $11,240.80 ($5,180 for the Debtor and $6,060.80 for Elizabeth) and disposable income of $78.66 after subtracting the $11,162.14 of expenses listed on the Debtor's Schedule J (Current Expenditures of Individual Debtor(s)) to the bankruptcy petition.

---

[1] The facts are taken from the schedules filed by the Debtor in his case and the pleadings, exhibits, and other papers submitted by the parties in connection with the Motion to Dismiss and this Motion.

According to the Earnings Statement, Elizabeth's deductions for taxes, Medicare, and social security totaled $761.62, or approximately $1,523.24 on a monthly basis, which is slightly more than the $1,515.20 deduction made by S&B on line 4 of Schedule I.  However, S&B did not include Elizabeth's deductions for healthcare, dental insurance, and dependent care which totaled $619.67 on a bi-weekly basis, or approximately $1,239.34 on a monthly basis.  If S&B included Elizabeth's deductions for pre-tax benefits, then the average monthly net income for Elizabeth alone would be approximately $4,813 rather than the $6,060.80 reported on Schedule I, which would result in a lower combined average monthly net income for the Debtor's household.[2]

After the Debtor's initial meeting of creditors held on August 22, 2013, Charles H. Scupp ("Scupp") of S&B stipulated to extend the Trustee's time to object to the Debtor's discharge pursuant to 11 U.S.C. §§ 707 and 727 through and including January 30, 2014.  In the meantime, on November 4, 2013 and January 15, 2014, S&B provided the Trustee's counsel with various documents, including bank statements with respect to the Hansons' bank account at PNC Bank for the period December 20, 2012 to December 18, 2013 (the "Bank Statements"), the Earnings Statement, and the Hansons' 2012 tax returns.

By letter dated January 16, 2014 (the "January 16 Letter"), the Trustee's counsel informed Scupp that based upon the documents provided, the Trustee believes that (i) the Debtor has an ability to repay his debts under a chapter 13 plan, and (ii) the Debtor's chapter 7 case should be dismissed under 11 U.S.C. § 707(b)(3) as an abuse of the bankruptcy process.[3] Trustee's counsel also requested that Scupp sign and return another stipulation to further extend the Trustee's time to object to the Debtor's discharge from January 30, 2014 to March 31, 2014

---

[2] Based on this calculation, it appears that S&B may have over-reported Elizabeth's monthly net income.
[3] Under section 707(b)(3)(B), a court may dismiss the case of a debtor if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse."  11 U.S.C. § 707(b)(3)(B).

to allow the parties more time to discuss the issues set forth in the January 16 Letter. Trustee's counsel advised Scupp that if a signed stipulation was not returned by January 20, 2014, the Trustee would assume that the Debtor did not wish to discuss a resolution of the matter and the Trustee would file a motion to dismiss the chapter 7 case pursuant to 11 U.S.C. § 707(b)(1).[4] Trustee's counsel also requested that Scupp contact him upon receipt of the January 16 Letter to further discuss the matter.

On January 17, 2014, Scupp returned a signed stipulation which was "so ordered" by the Court on January 21, 2014.

Apparently, no further contact was had between Scupp and the Trustee's counsel and neither party reached out to the other. Scupp assumed that his sending the signed stipulation indicated that the Debtor did not want to have the case dismissed. On the other hand, the Trustee's counsel assumed that no further contact by Scupp after the stipulation was signed meant that Scupp did not want to discuss the matter any further. Therefore, on March 31, 2014, two and a half months later, the Trustee filed the Motion to Dismiss, which included a request for an award of attorneys' fees. The Motion to Dismiss was served on the Debtor, Scupp, and the Office of the United States and scheduled to be heard on June 17, 2014 (the "June Hearing").

In the Motion to Dismiss, the Trustee alleged that, *inter alia,* the Hansons' monthly net income was underreported as his review of the Bank Statements for the period December 2012 to December 2013 disclosed that the Hansons' combined average monthly deposit aggregated $14,842.53, as opposed to the net income of $11,240.80 reported by the Debtor on Schedule I. The increase in monthly income also increased the disposable income on Schedule J that would be available to creditors from $78.66 to $3,680.39. In addition, because the Hansons received

---

[4] Section 707(b)(1) permits the dismissal of a chapter 7 debtor's case if granting that debtor relief "would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1).

federal and state income tax refunds in the sum of $19,971 for the 2012 tax year (the "Tax Refunds"), the Trustee contended that when the Tax Refunds were amortized over a 12 month period, an additional $1,664.25 should be added to the Debtor's monthly net income on Schedule I. This addition would further increase the Debtor's disposable net income on Schedule J to $5,344.64 per month.

Although the Debtor had scheduled approximately $331,938 in general unsecured debt, only $35,832.93 in general unsecured claims were filed by the November 25, 2013 bar date for filing proofs of claim. The Trustee concluded that with $5,344.25 in monthly disposable income, the Debtor would be able to pay a 100% distribution to all creditors with allowed claims within 7 months under a chapter 13 plan. Accordingly, the Trustee took the position that the Debtor's chapter 7 petition was an abusive filing under 11 U.S.C. § 707(b).

Neither the Debtor nor S&B filed any papers in opposition to the Motion to Dismiss, contacted the Trustee or his counsel to resolve the Motion to Dismiss, or appeared in Court at the June Hearing to controvert the allegations set forth in the Motion to Dismiss. The Court granted the Motion to Dismiss, but directed the Trustee to file a separate motion for attorneys' fees as no showing or evidentiary support for the award of fees was made in the Motion to Dismiss.

The Trustee filed the Motion on June 25, 2014 seeking, pursuant to 11 U.S.C. § 707(b)(4)(C) and (D), an award of $7,689.07 against S&B for attorneys' fees and costs the Trustee incurred in connection with the prosecution of the Motion to Dismiss. The Trustee argues that if S&B had undertaken a reasonable investigation of the Hansons' income and closely examined the Hansons' total bank deposits for the six-month prepetition period January 19, 2013 to July 18, 2013, S&B would have concluded that the Hansons' combined monthly net income in Schedule I was significantly understated as actual income exceeded $14,000 while

5

only $11,240.80 was scheduled.  The Trustee contends that if S&B had performed the requisite

investigation, his counsel would not have expended 22.58 hours in reviewing the Debtor's

schedules and Bank Statements, researching relevant case law as to a debtor's ability to repay his

debts under section 707(b), preparing the Motion to Dismiss, and appearing at the June Hearing.

S&B filed an objection [docket no. 27] to the Motion.  In its objection, S&B argues that if

only the deposits listed in the Bank Statements for the six-month prepetition period December

20, 2012 to June 19, 2013 are considered, the average monthly gross income is $14,078, which is

close to the gross amount of $14,051 reported on line 1 of Schedule I.  Second, S&B contends

that the Trustee's inclusion of the Hansons' bank deposits for the six-month period postpetition

in his calculation of the Hansons' monthly disposable net income for purposes of the Motion to

Dismiss was improper as no attorney could foresee what a debtor's average monthly gross

income would be postpetition, especially when a debtor is self-employed and has uneven wage

income as is the case with the Debtor.  As to the Debtor's purported income tax liability, S&B

avers that because it did not have any earnings statements for the Debtor, it estimated what

income taxes the Debtor would have to pay based upon six months of prepetition income.  S&B

also argues that it was improper for the Trustee to include the Hansons' 2012 tax refunds in his

calculation of disposable net income since the Hansons did not regularly receive tax refunds.

S&B points out that the Hansons under-withheld their taxes for the 2013 tax year and owed

$14,572 in federal income taxes and $1,993 in New York State income taxes.

The Trustee filed a reply dated July 17, 2014 [docket no. 29].  In his reply, the Trustee

asserts that (1) he is charged with a fiduciary obligation to determine whether a debtor has

sufficient disposable income to pay all or a portion of his debts such that a chapter 13 filing

would have been more appropriate, and (2) he is required to look at both prepetition and

postpetition income.  The Trustee disagrees with S&B's statement that the average monthly

gross income reported on Schedule I accurately reflected the Hansons' bank deposits because the

deposits that represented Elizabeth's wages consisted of her net income after deductions were

taken, as opposed to the gross number reported on line 1 of Schedule I.  The Trustee further

contends that an examination of the Bank Statements for the six-month prepetition period

January 19, 2013[5] to July 18, 2013 discloses that the average monthly net deposits totaled

$14,688.09 for purposes of line 6 of Schedule I in contrast to the $11,240.80 reported by the

Debtor.

At the hearing on the Motion held on July 22, 2014, neither the Trustee nor S&B

presented any witness testimony or offered any exhibits into evidence.  The Court considered the

oral arguments made by the Trustee's counsel and by Scupp at the July 22 hearing, which

essentially reiterated the arguments set forth in their papers.


## DISCUSSION

I.    11 U.S.C. § 707(b)(4)(C) and (D).

The Court must determine whether S&B's calculation of the Debtor's net income and

disposable income in Schedules I and J is incorrect and, if so, whether the inaccuracies rise to the

level of a Bankruptcy Rule 9011(b) violation pursuant to 11 U.S.C. § 707(b)(4)(C) and (D), such

that an award of attorneys' fees and costs incurred by the Trustee in prosecuting the Motion to

Dismiss would be warranted under 11 U.S.C.  § 707(b)(4)(A).

Scupp signed the Debtor's bankruptcy petition as Debtor's counsel.  Beneath Scupp's

signature and contact information is the following form language contained in every petition:

---

[5] The Trustee incorrectly references the January 19, 2013 to February 19, 2013 bank statement as commencing on
January 9, 2013.

> In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

Even though it is the debtor and not the attorney that signs the declaration that the schedules are true and correct to the best of the debtor's knowledge, information and belief, by signing the petition, an attorney certifies that he or she has complied with the obligation under section 707(b)(4) in ascertaining whether the information in the schedules is incorrect.

Subsection 707(b)(4)(D) of the Bankruptcy Code provides that:

> (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

11 U.S.C. § 707(b)(4)(D). In addition, when an attorney signs a bankruptcy petition pursuant to 11 U.S.C. § 707(b)(4)(D), such attorney is also making a certification under section 707(b)(4)(C) that the attorney has –

> (i) performed a reasonable investigation into the circumstances that gave rise to the petition . . .; and
> (ii) determined that the petition . . . –
> > (I) is well grounded in fact; and
> > (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph [707(b)](1).

11 U.S.C. § 707(b)(4)(C).

Courts have found an attorney's obligation to perform a reasonable investigation under subsections 707(b)(4)(C) and (D) to be equivalent to the duty under Bankruptcy Rule 9011 to make a reasonable inquiry as to the circumstances giving rise to the bankruptcy petition and all the facts asserted therein. *Lafayette v. Collins (In re Withrow)*, 405 B.R. 505, 512 (B.A.P. 1st Cir. 2009). The remedy for failure to comply with subsections 707(b)(4)(C) and (D) is set forth

in subsections 707(b)(4) (A) and (B), which provide for the reimbursement of reasonable costs incurred by the trustee and the imposition of an appropriate civil penalty should the court find a violation of Bankruptcy Rule 9011. *Desiderio v. Parikh (In re Parikh)*, 508 B.R. 572, 585-86 (Bankr. E.D.N.Y. 2014) (stating that subsections 707(b)(4)(C) and (D) should be read in conjunction with subsections 707(b)(4)(A) and (B)).

By the way of this Motion, the Trustee seeks relief under Section 707(b)(4)(A), which provides that:

> (A) The court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may order the attorney for the debtor to reimburse the trustee for all reasonable costs in prosecuting a motion filed under section 707(b), including reasonable attorneys' fees, if –
>> (i) a trustee files a motion for dismissal . . . under this subsection; and
>> (ii) the court –
>>> (A) grants such motion; and
>>> (B) finds that the action of the attorney for the debtor in filing a case under this chapter violated rule 9011 of the Federal Rules of Bankruptcy Procedure.

11 U.S.C. §§ 707(b)(4)(A). See also *In re Parikh*, 508 B.R. at 595. The Trustee specifically seeks under § 707(b)(4)(A), the reimbursement of his attorneys' fees and costs incurred in prosecuting the Motion to Dismiss, which the Court granted, on the basis that the inaccuracies in the Debtor's Schedules I and J demonstrate that S&B violated Bankruptcy Rule 9011.

Bankruptcy Rule 9011(b) provides as follows:

> (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed *after an inquiry reasonable under the circumstances*, —

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions had evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b) (emphasis added).

Thus, under Bankruptcy Rule 9011, the signing and/or filing of a petition with the court constitutes a certification by an attorney that to the best of the attorney's knowledge, information, and belief, "formed after an inquiry reasonable under the circumstances", that, *inter alia*, (i) the petition is not being presented for any improper purpose, and (ii) the factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation. Fed. R. Bankr. P. 9011(b). *Dignity Health v. Seare (In re Seare)*, 493 B.R. 158, 211 (Bankr. D. Nev. 2013) (finding the "reasonable investigation" under section 707(b)(4)(C) to be indistinct from the "reasonable inquiry" under Rule 9011, and to comply with section 707(b)(4)(C), an "attorney must perform an objectively reasonable investigation into the circumstances giving rise to the petition").

An analysis of whether an attorney conducted a reasonable investigation or inquiry is dependent upon the facts and circumstances of each case. At a minimum, an attorney must make some affirmative investigation into the underlying facts being represented to the court. While an attorney may generally rely on client representations, an attorney may not accept these representations at face value. *In re Seare*, 493 B.R. at 211. Rather, an attorney must

independently verify publicly available facts to determine whether such representations are objectively reasonable and to inquire further if the attorney is unable to verify such facts. *In re Parikh*, 508 B.R. at 585-86.

What constitutes "objectively reasonable" is measured by what a competent attorney admitted to practice before the court would do. *Orton v. Hoffman (In re Kayne)*, 453 B.R. 372, 382 (B.A.P. 9th Cir. 2011). Essentially, the court must determine whether "a reasonable attorney in like circumstances could believe his actions to be factually and legally justified." *In re Withrow*, 405 B.R. at 512 (quoting *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987)). The reasonableness of the inquiry under § 707(b)(4)(C) is examined at the time the petition was filed without the benefit of hindsight. *Seare*, 493 B.R. at 211. The court may consider factors such as:

1. whether the attorney impressed upon the debtor the critical importance of the accuracy in preparation of any documents to be presented to the court;
2. whether the attorney sought from the debtor, and then reviewed, whatever documents were within the debtor's possession and control in order to verify the information; and
3. whether the attorney employed such external verification tools as were available and not time- or cost-prohibitive.

*In re Triepke*, No. 09-21855-drd-7, 2012 Bankr. LEXIS 1596, at *14 (Bankr. W.D. Mo. April 12, 2012).

A reasonable investigation by counsel and the accompanying certification are essential to the administration of the bankruptcy case because the court, the trustee, and creditors are dependent upon the debtors and their counsel providing accurate and complete information in the petition and schedules.

Specifically, the information provided in a debtor's schedule I (income) and schedule J (expenses), as well as well as the "means

> test" (Official Form 22A) is critical to an analysis of a debtor's good faith in filing the petition as well as whether the debtor should be required to repay a certain portion of his debts in a Chapter 13. If debtors and debtors' counsel are not held accountable for inaccuracies in the petition and schedules, the system simply will not work.

*In re Parikh*, 508 B.R. at 591.  The need for accurate and complete information is so critical that the failure to conduct a reasonable investigation or inquiry as to the information contained in the petition and schedules may subject the certifying attorney to not only attorneys' fees and costs, but also sanctions.


A.      The Hansons' Tax Refund.

The Trustee asserts that Scupp failed to include the Hansons' anticipated tax refund in the calculation of their household income for purposes of the Debtor's Schedule I.  Post-confirmation tax refunds are included in the calculation of "projected disposable income" for purposes of a chapter 13 plan and are included as property of a chapter 13 estate.  *In re Malewicz*, 457 B.R. 1, 4 (Bankr. E.D.N.Y. 2010).  However, in a chapter 7 case, anticipated tax refunds are included in the determination of a debtor's net income for purposes of § 707(b) so long as there is a realistic prospect of similar refunds in the future.  *In re Fitzgerald*, 418 B.R. 778, 783 (Bankr. D. Conn. 2009); *In re Durczynski*, 405 B.R. 880, 885 (Bankr. N.D. Ohio 2009) (citing *In re Blankenship*, 398 B.R. 457, 462 (Bankr. N.D. Ohio 2008)).

While the Hansons received a $19,971 tax refund for the 2012 tax year, there is no evidence that (1) the Hansons consistently over-withheld their income taxes and received tax refunds in similar amounts for the tax years prior to the 2012 tax year, (2) the income earned prepetition for 2013 was either the same or greater than prior years and the tax withholding for 2013 remained the same or was reduced such that the Hansons would likely have received a

similar or greater tax refund for the 2013 tax year, and (3) Scupp's failure to include an estimate

of the Hansons' tax refund as income in the Debtor's Schedule I was unreasonable under the

circumstances.  In fact, according to S&B, the Hansons under-withheld and owed income taxes

for the 2013 tax year.  The inclusion of future tax refunds based upon the Hansons' 2012 tax

refunds in the calculation of the Debtor's disposable income would have overstated what the

Debtor actually would have had to pay his creditors under a chapter 13 plan.  As a result, the

Court cannot conclude that Scupp failed to conduct a reasonable investigation into the Hansons'

tax refunds or that a similarly competent attorney would have included an estimate for the

Hansons' 2013 tax refunds in the Debtor's Schedule I based upon their 2012 tax refund, or that

such failure was improper and made in bad faith to the detriment of the Debtor's creditors.


       B.      Calculation of Income.

The Trustee also contends that S&B failed to conduct a reasonable inquiry into the

Hansons' finances when calculating the Debtor's current income for purposes of completing

Schedule I.  How much current monthly net income, and ultimately disposable income a chapter

7 debtor has after deducting expenses, is critical in determining whether such debtor has the

ability to pay a substantial amount or percentage of his or her unsecured debts over time pursuant

to a plan under chapter 13 of the Bankruptcy Code.  *In re Campbell*, No. 11-70038-ast, 2012

Bankr. LEXIS 636, at *19 (Bankr. E.D.N.Y. Feb. 1, 2012).  Where such an ability to pay exists,

depending upon any mitigating or aggravating factors, a court may find that a chapter 7 filing

constitutes an abuse of the chapter 7 provisions of the Bankruptcy Code under 11 U.S.C.

§ 707(b)(3); and therefore, the case should be dismissed.  *Id.*; *In re Colgate*, 370 B.R. 50, 56

(Bankr. E.D.N.Y. 2007).

"For purposes of an ability to pay analysis under § 707(b)(3), a debtor's disposable income is defined generally as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." *In re Campbell*, 2012 Bankr. LEXIS 636, at *19 (quoting *In re Hoke*, 447 B.R. 835, 837 (Bankr. N.D. Ohio 2011)).  When considering the current and disposable income of a chapter 7 debtor, the Court considers the income of not only the debtor but also the non-debtor spouse to the extent the spouse's income is used to pay for household expenses.  As set forth in the Bankruptcy Code, "current monthly income" includes, *inter alia*, "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents."  11 U.S.C. § 101(10A)(B).  See also *In re Persaud*, 486 B.R. 251, 262 (Bankr. E.D.N.Y. 2013).

The Trustee contends that S&B failed to conduct a reasonable investigation into the Hansons' finances because a review of the Bank Statements would have led S&B to arrive at calculations similar to those made by the Trustee for the Hansons' monthly income for Schedule I.  The discrepancy between the amounts of monthly income arises in part due to differences in the methodology used by each party in arriving at the information for Schedule I.  Scupp utilized the Bank Statements for the period December 20, 2012 to June 19, 2013 while the Trustee (a) in his Motion to Dismiss, utilized the Bank Statements for both the six-month period prepetition and the six-month period postpetition, and (b) in this Motion, utilized the Bank Statements for the period January 19, 2013 to July 18, 2013.

For purposes of the Motion to Dismiss, the Trustee added all of the Hansons' bank deposits for the six months prepetition and six months postpetition to arrive at a monthly average income of $14,842.53, which the Trustee argued should be the currently monthly income as

14

opposed to the $11,240.80 reported on Schedule I. However, an attorney may not always be able predict or make an educated guess as to what a debtor's income would be for the postpetition period with any degree of certainty. This is notably so where a debtor is self-employed and may not have steady wage income, such as individuals who are independent contractors or business owners who may not draw a regular salary or distribution, or who receive commission-based income[6]. Indeed, even the statutory definition of "current monthly income" under 11 U.S.C. § 101(10A) utilized in the means test calculation to determine whether there is a presumption of an abusive chapter 7 filing under section 707(b) does not include postpetition income. Moreover, the inclusion of six-months postpetition income for such type of chapter 7 debtors would require their bankruptcy cases to remain open and the time for filing a motion to dismiss under § 707(b) to be routinely extended for at least half a year and, consequently, deny deserving debtors an expedient discharge of their debts.

In this case, there was nothing in the record to indicate that all the postpetition deposits in the Hansons' PNC Bank account related to prepetition services or constituted income that should be included in the calculation in monthly income as of the Petition Date for purposes of Schedule I. There has been no evidence submitted that a competent bankruptcy attorney would have included the Hansons' postpetition bank deposits in the calculation of monthly income in preparing the schedules. Accordingly, the Court cannot find that S&B's failure to include postpetition bank deposits rose to the level of a violation under Bankruptcy Rule 9011 and § 707(b)(4).

---

[6] However, this does not mean income, such as a bonus, outside the six-month prepetition period is never considered. *Edwards v. Akers (In re Edwards)*, No. 12cv2276JM(KSC), 2013 U.S. Dist. LEXIS 117575 (S.D. Cal. Aug. 19, 2013) (holding that the portion of the postpetition bonus payments that is attributable to prepetition services are property of the chapter 7 estate while the portion allocable to postpetition services will not be); *CIB Marine Capital, LLC v. Herman (In re Herman)*, 495 B.R. 555 (Bankr. S.D. Fla. 2013); *In re Gannon*, No. BK06-41399, 2007 Bankr. LEXIS 604 (Bankr. D. Neb. Feb. 20, 2007).

The Trustee argues that even if a review of the Bank Statements is limited to the six-month period prepetition, the Debtor's currently monthly income on Schedule I is still significantly underreported.  Based on the Trustee's analysis, for the six-month period prepetition, the Hansons' combined monthly income exceeds $14,000.  The Trustee arrives at this conclusion by including the bank statement for the period June 20, 2013 to July 18, 2013 because the chapter 7 petition was filed on July 25, 2013.  S&B, on the other hand, did not include the period June 20, 2013 to July 18, 2013 when determining the current monthly income for reporting purposes under Schedule I.  S&B's analysis was premised on the six-month period ending June 19, 2013.  Each of the Trustee's and S&B's computation is as follows:

| Statement Period | Monthly Total Included in Trustee's Calculation | Monthly Total Included in S&B's Calculation |
|---|---|---|
| 12/20/2012-1/18/2013 | Not Used | $12,773.83 |
| 1/19/2013-2/19/2013 | $18,581.28 | $18,581.28 |
| 2/20/2013- 3/19/2013 | $7,434.30 | $7,434.30 |
| 3/20/2013-4/17/2013 | $18,622.25 | $18,622.25 |
| 4/18/2013-5/17/2013 | $22,276.36 | $22,276.36 |
| 5/18/2013-6/19/2013 | $4,784.20 | $4,784.20 |
| 6/20/2013-7/18/2013 | $16,430.17 | Not Used |
| Monthly Average | $14,688.09 | $14,078.70 |

The use of the different Bank Statements resulted in a difference of approximately $600 between the Trustee's numbers and those of S&B.

In addition, the Trustee asserts that the combined average monthly net income on line 16 of Schedule I exceeds $14,000.  While Scupp argued that the income listed on Schedule I totals $14,051, an amount similar to what the Trustee calculated, the Trustee correctly noted that the $14,051 is the monthly gross income reported on line 1 of Schedule I without taking any deductions as opposed to the net number on line 16.  The amount calculated by the Trustee

16

included Elizabeth's net income deposited in the Hansons' bank account after deductions for taxes, health insurance, health savings account expenses, dependent care expenses, etc., that are normally deducted from wages.  Thus, there is a $3,000 discrepancy between the Trustee's calculation and the $11,240.80 reported by S&B with respect to the combined average monthly net income for lines 6 and 16.

While Scupp failed to recognize that the amount on lines 6 and 16 of Schedule I arrived at by the Trustee included Elizabeth's net income as opposed to gross income, the Trustee, in turn, did not deduct any taxes from the deposits into the PNC Bank account that represent the Debtor's gross income for the portion of the combined average monthly net income listed on Schedule I.  Scupp had taken a 20% deduction for income taxes with respect to the Debtor's income on Schedule I, but the Trustee's calculation of net income for lines 6 and 16 of Schedule I included the Debtor's gross income rather than net income after taxes as provided and reflected by S&B under line 4 of Schedule I.  Accordingly, if the same 20% tax withholding were to apply to the balance of the deposits after deducting Elizabeth's monthly net income, the Hansons' combined average monthly income would be less than the over $14,000 the Trustee claims.  This in turn would reduce the amount of disposable income available for creditors.

The Court declines, however, to conduct that actual calculation since the exact amount of disposable income is not an issue before the Court, nor can a straightforward calculation of this sum be made based upon the evidence submitted to the Court.  For example, a review of the Bank Statements indicates that some of the deposits into the Hansons' bank account in the six-month prepetition period are from Psyop Productions, LLC but do not appear to be Elizabeth's regular wage income.  These deposits could represent reimbursement for healthcare or dependent care expenses or for business expenses which are not included in net income or they could be

17

other forms of taxable income.  Similarly, the Court has no information as to whether all the

deposits in the PNC Bank Account from sources other than Psyop Productions, LLC also

constitute income of the Hansons or whether some of the deposits represent reimbursements for

the Debtor's business expenses, or one time gifts, etc.  Without information as to the nature or

character of these deposits in the PNC Bank account, the Court cannot determine whether the

discrepancies in S&B's calculation of net income in Schedule I are material, and whether they

were conscious or inadvertent.

Notwithstanding the discrepancies contained in Schedule I, a review of the pleadings, for

purposes of determining whether S&B conducted a reasonable investigation of the Debtor's

finances, the bankruptcy schedules filed in this case, and the arguments made by counsel, reveals

that S&B purportedly used the same documents to the extent they were available prepetition to

complete the Debtor's Schedules I and J as did the Trustee in support of his Motion to Dismiss

and this Motion (other than the postpetition Bank Statements).  Therefore, it would appear that

S&B sought documents from the Debtor regarding the Hansons' finances.  There is no evidence

that the Debtor gave S&B false or misleading information since S&B utilized the Earnings

Statement and the Bank Statements to prepare the Debtor's Schedule I.  It is doubtful that a

further investigation or inquiry in this case by S&B into the Debtor's finances would have

produced a different result as any mistake or discrepancy would lie in the interpretation and

calculation of the information contained in the Bank Statements and other documents, as

opposed to a failure to ascertain and disclose material information regarding a debtor's assets and

liabilities. Nor has there been any evidence submitted that any external verification tool was

available and the use of such tool would have produced a difference result.  While the process of

interpreting and calculating a debtor's gross and net income for Schedules I and J is not

complicated, it may not always be straightforward when dealing with a debtor whose income may be sporadic as is the case here.

At most, any material discrepancy or inaccuracy in the Debtor's schedules would be attributable to a failure by S&B to carefully interpret, calculate and review the information given. These inaccuracies would be indicative of inattention to detail, and a lack of thoroughness in the preparation and review of the schedules which are required to assure full and complete reporting of information so vital to the proper administration of a bankruptcy case. While S&B may have been lax in the preparation of the Debtor's schedules, there is no evidence that S&B had knowledge that the information in the Debtor's schedules was incorrect at the time they were filed. As such, the Court cannot find that S&B failed to conduct a reasonable investigation into the Debtor's finances and thereby violated Bankruptcy Rule 9011(b) and §§ 707(b)(4)(C) and (D) under the circumstances of this case.

Notwithstanding the absence of a violation under Bankruptcy Rule 9011(b) and 11 U.S.C. § 707(b)(4), the Court notes that lack of attention to detail in the review, calculation and preparation of a debtor's schedules should not be condoned or excused as such laxity is detrimental to the proper and expedient administration of a bankruptcy case, and may very well result, as the case here, in the investment of time and resources by a trustee questioning whether the bankruptcy filing is an abuse of the provisions of the Bankruptcy Code. The Court recommends that S&B reviews its procedures relating to the intake, preparation, and review of bankruptcy petitions and the accompanying schedules to ensure that similar discrepancies do not occur again in the future and, if they do occur, to promptly amend the debtor's schedules.

<u>CONCLUSION</u>

While the Court recognizes that the Trustee has incurred attorneys' fees and costs in bringing the Motion to Dismiss, under the facts and circumstances of this case, the Court must deny the Motion.

SO ORDERED.



**Dated: February 27, 2015**
    **Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**